UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH RUSH, *INDIVIDUALLY, AND* :
*AS MOTHER AND NATURAL GUARDIAN* :
*OF OLIVIA RUSH*, :
    Plaintiff, :
     :
    v. : No. 5:17-cv-01293
     :
220 INGRAHAM OPERATING CORP. and :
TRYAD GROUP MANAGEMENT, LLC, :
    Defendants/Third-Party Plaintiffs, :
     :
    v. :
     :
DOMINICK BOYD; ALICIA BROWN; :
KATE BOYD; BORN INTO THE ARTS; :
and B.I.A. STUDIOS, LLC, :
    Third-Party Defendants :

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 7 – Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**            **May 18, 2018**
**United States District Judge**

## I.    INTRODUCTION

This is a personal injury/breach of contract action brought by Elizabeth Rush, individually and as mother and natural guardian of Olivia Rush, a minor, arising from the injury Olivia suffered when she tripped on allegedly defective flooring during her dance lesson. The owners of the dance studio rented the space from Defendants. Defendants have moved to dismiss the breach of contract and negligent retention counts, as well as all requests for punitive damages. For the reasons set forth below, the Motion to Dismiss is granted with respect to the

breach of contract and negligent retention counts, but denied as to the claim for punitive damages in Count Three.

## II. BACKGROUND

Reading the factual allegations in the light most favorable to Rush, the Complaint alleges as follows: Dominick Boyd and Alicia Brown own a dance studio called Born Into The Arts, where Olivia Rush took dance lessons. The floor inside the building housing the dance studio was not suitable for dance instruction and when Defendants' custodian attempted to cover the defective floor with a linked wood floor overlay, he created a tripping hazard. Olivia tripped on the hazard and suffered serious injury, including permanent brain damage. The property housing the dance studio was rented by Born Into The Arts (alias B.I.A. Studios, LLC) ("the tenant") from Defendant 220 Ingraham Operating Corp.[1] A provision in the commercial lease between B.I.A. Studios, LLC and 220 Ingraham Operating Corp. required the tenant to obtain liability insurance in the amount of $1,000,000, which it did not acquire, and to obtain an inspection by the City of Bethlehem to operate a dance studio, which it did not procure. An inspection would have revealed the defective flooring, and the lack of insurance has made the tenant judgment proof, both of which have harmed Rush, and form the basis of Count One: breach of contract.

In Counts Two and Three, Rush claims that Defendants were negligent in not requiring the tenant to get the property inspected by the City and, *inter alia*, leaving the property to the tenant knowing it would be used as a dance studio even though the floor was not in a safe condition. Finally, Rush asserts a negligent retention claim in Count Four for Defendants' alleged negligent retention of the tenant knowing that the tenant was not complying with the terms of the lease by (1) failing to maintain insurance, (2) failing to obtain licensing from the

---

[1] Defendant Tyrad Group Management, LLC was allegedly the agent of 220 Ingraham Operating Corp.

City to operate a dance studio, (3) damaging the floor by installing an overlay, and (4) making delinquent rent payments. Rush seeks punitive damages in Counts Three and Four.

Defendants filed a Motion to Dismiss Counts One and Four for failure to state a claim, and the punitive damages claim in Counts Three and Four as not properly supported. Rush filed a brief in opposition to the Motion to Dismiss.

### III. STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. ANALYSIS

### A. Count One, breach of contract, is dismissed because Rush was neither a party to the contract nor a third-party beneficiary.

Defendants argue that the breach of contract claim should be dismissed because Rush was not a party to the contract, nor an intended third-party beneficiary. In response, Rush alleges, *inter alia*, that Olivia was an intended third-party beneficiary of the contract based on the duty Defendants owed to a business invitee and based on her alleged membership in a class of persons that the City inspection was designed to protect.

There are two tests for third-party-beneficiary status under Pennsylvania law. The first requires that the parties to the agreement indicate in the contract that the purported beneficiary is a third-party beneficiary. *See M.S. v. Cedar Bridge Military Acad.*, 904 F. Supp. 2d 399, 412 (M.D. Pa. 2012), *adopted by* 904 F. Supp. 2d 399, 401-03 (M.D. Pa. 2012) (holding that the plaintiff could not show that the defendant had a duty to ensure that its tenant maintain liability insurance). The second test does not require an affirmative recognition of the purported beneficiary in the contract itself, but imposes two requirements: (1) the circumstances must be so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties (standing requirement), and (2) it must be shown either that the performance satisfies an obligation of the promisee to pay money to the beneficiary or that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance (the two types of claimants that may be intended third-party beneficiaries). *Id.*

Rush does not allege that her daughter was affirmatively recognized as a beneficiary in the lease; therefore, the second test applies. Applying this test, this Court finds that Rush was not an intended third-party beneficiary. As to Rush's reliance on the insurance provisions in the lease and the duties of a landlord to a tenant's invitees, "Pennsylvania courts have held that

insurance clauses do not create third party beneficiary status because these clauses are typically drafted to protect lessors, not to benefit lessees' business invitees." *Bryan v. Acorn Hotel*, 931 F. Supp. 394, 397 (E.D. Pa. 1996). *See also Taylor v. Pathmark Inc.*, No. 11-7702, 2013 U.S. Dist. LEXIS 33526, at *2 (E.D. Pa. Mar. 11, 2013) (dismissing the breach of contract claim against a grocery store and the company it contracted with to conduct snow removal because the plaintiff, who was injured when he slipped on ice outside the grocery store, was not a party to, nor intended third-party beneficiary of, the contract). Rush's argument that she was a member in a class of persons that the City inspection was designed to protect is also unavailing because the Pennsylvania courts "do not believe that parties ordinarily intend to confer such benefits upon the public at large or assume such massive potential liability when they enter into a contract." *Hicks v. Metro. Edison Co.*, 665 A.2d 529, 535 (Pa. Commw. Ct. 1995) (refusing to extend third-party beneficiary status to a good samaritan, who was shocked by electrical wires after he stopped to help the driver of a vehicle that crashed into a utility pole, where the tree company had not carried out its contractual duties to the electric company to inspect utility poles).

The breach of contract claim is dismissed with prejudice.[2]

**B.   Count Four, negligent retention, is dismissed because Pennsylvania has not recognized this cause of action as applying to a landlord-tenant relationship.**

Defendants move to dismiss the claim for negligent retention, arguing that there is no Pennsylvania law holding a landlord liable to a third-party for negligently leasing premises to a tenant and because the allegations in this claim echo the deficient allegations in the breach of

---

[2]   Courts should generally allow leave to amend before dismissing a complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This Court finds that any amendment to the breach of contract claim would be futile. *See Jones v. S. Williamsport Sch. Dist.*, No. 4:11-cv-1179, 2012 U.S. Dist. LEXIS 10099, at *15-16 (M.D. Pa. Jan. 25, 2012) (dismissing the breach of contract claim with prejudice because the plaintiff was not an intended beneficiary).

contract claim and are therefore nothing more than Rush's attempt to disguise a breach of contract claim as a negligence claim. Rush, in opposition, asserts that the role of an employee mirrors the role of a tenant and suggests that employment law supports the claim. She relies on *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. 2000).

In *Brezenski*, the court entered summary judgment in favor of the former employer on the negligent retention claim, holding that the employer could not be held liable for the unforeseen criminal acts of its former employee, a truck driver who murdered the homeowner where his truck had gone off the road, regardless of the fact that the employee's schizophrenia was evident when he was hired and the employer knew the employee had brought a firearm to work only a few weeks earlier. The court discussed when a person owes a duty to protect a third party from harm and summarized the instances where a special relationship exists. *Id.* at 40-41 (citing Restat. 2d of Torts, §§ 314A-320 (2nd 1979)).

Of the sections of the Restatement of Torts cited by the court in *Brezenski*, only § 318 imposes a duty to exercise reasonable care on the landlord-tenant relationship.[3] However, the rule stated in § 318 imposes a duty when the owner is present and "he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so." *See* Restat 2d of Torts, § 318, comment b. Defendants were not present at the time of Olivia's injury; therefore, this Court is not persuaded that the negligent retention claim in Count Four is supported by *Brezenski*. *See also Bradshaw v. Gen. Motors Corp., Fisher Body Div.*, 805 F.2d 110, 115 (3d Cir. 1986) (holding that the employer-employee relationship is not sufficiently similar to that of landlord-tenant to justify relaxing the requirements of an intentional infliction of emotional distress claim).

---

[3] Although § 314A may also apply to the landlord-tenant relationship, this Section addresses the duty to give aid, which is not at issue here.

This Court has found no case in Pennsylvania that has extended a negligent retention claim to the landlord-tenant relationship, nor has either party cited one. The jurisdictions that have recognized such a claim have done so in narrow circumstances. *See, e.g., Anderson v. 124 Green St., LLC*, 28 Mass. L. Rep. 119 (Mass. Super. Ct. 2011) (holding that a "duty to evict or to refuse rental may arise where the landlord knows of a specific threat that one tenant poses to another or where there is a history of violence by one tenant against other tenants"); *Williams v. Gorman*, 520 A.2d 761, 765 (N.J. Super. Ct. 1986) (concluding that "[a]bsent notice or knowledge of [the tenant's] dangerous propensities, the landlord could not reasonably foresee any harm to plaintiff or other tenants in the building" and "[t]he absence of any foreseeability of harm means defendants were under no duty to evict [the tenant]"). Other courts have refused to even recognize a duty to evict. *See, e.g., Davenport v. D.M. Rental Props.*, 718 S.E.2d 188, 191 (N.C. 2011) (explaining that "[a]lthough we have recognized a landowner's duty to exercise reasonable care to protect tenants from foreseeable third-party criminal acts, we have never recognized as included in that duty to protect the duty to evict a tenant"); *Molosz v. Hohertz*, 957 P.2d 1049, 1052 (Colo. Ct. App. 1998) (finding that the landlords, regardless of their knowledge of their tenant's mental instability and prior violent behavior, were not liable for negligent retention when the tenant fired multiple shots from the windows as "no statute or other principle of common law imposes such a duty"). This Court, sitting in diversity, is reluctant to recognize such a claim. *See Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 223 (3d Cir. 1984) ("While a federal court must be sensitive to the doctrinal trends of the jurisdiction whose law it applies, it is beyond the authority of a federal court in such circumstances to create entirely new causes of action.").

Consequently, in the absence of any indication that Pennsylvania law would recognize a negligent retention claim under the facts alleged here, this Court dismisses Count Four. In reaching this decision, this Court has considered that Rush still has a viable negligence claim against Defendants and, of the four alleged facts Rush contends support the negligent retention claim, the two which might have possibly supported such a claim also form the basis of Count Two.[4] Count Four is dismissed with prejudice.

### C. The claim for punitive damages in Count Three is sufficient at this early stage of the proceedings.

Defendants argue that the claim for punitive damages in Counts Three[5] and Four[6] should be dismissed because Rush has failed to allege conduct so outrageous as to demonstrate willful, wanton, or reckless conduct.[7] Rush responds that the motion to dismiss is premature because discovery has not begun.

While this Court disagrees that the motion is premature, *see Ashcroft*, 556 U.S. at 686 (holding that a plaintiff is not entitled to conduct discovery where a "complaint is deficient under Rule 8"); *Mann v. Brenner*, 375 F. App'x 232, 239-40 (3d Cir. 2010) ("A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on

---

[4] Rush's allegation that Defendants were negligent in retaining the tenants because they failed to maintain insurance would not state a claim because a landlord does not have a duty to ensure that its tenant maintain liability insurance. *See M.S.*, 904 F. Supp. 2d at 412. Rush's allegation that the tenants were delinquent in making rent payments would have also failed to support a negligent retention claim because nothing about this conduct caused Olivia's harm.

[5] Count Three alleges that Defendants are vicariously liable for the torts of its employees pursuant to the doctrine of respondeat superior.

[6] Count Four has been dismissed and the request to dismiss the claim for punitive damages in this count is denied as moot.

[7] Punitive damages are awarded to punish a tortfeasor for "outrageous conduct" and are "proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Odell v. CIT Bank*, No. 17-1850, 2017 U.S. Dist. LEXIS 136190, at *17 (E.D. Pa. 2017) (quoting *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)).

its face without extensive factual development."), it nevertheless declines to dismiss the punitive damages claim at this early stage of the proceedings.

Defendants' argument focuses on Rush's allegations that it allowed its tenant to operate a dance studio with a dangerous dance floor and failed to terminate the lease. If these were the only allegations, this Court would agree that Rush has failed to allege outrageous conduct. *See Lerner v. Sherry Lake Apartments, Inc.*, No. 84-6119, 1986 U.S. Dist. LEXIS 28052, at *12 (E.D. Pa. 1986) (holding that the claim for punitive damages "must be supported by facts tending to show that the defendants' conduct was more serious than the mere commission of the underlying tort of negligence"). However, Rush also alleges that it was Defendants' custodian that installed a floor overlay, that the overlay was "worse for dancing than the original floor," and that it was this overlay that created the tripping hazard on which Olivia fell and was injured. *See* Compl. ¶¶ 16-17, 26. Drawing all inferences in the light most favorable to Rush, this Court finds that Rush has stated an alleged claim for punitive damages at this stage of the proceedings. *But see Brezenski*, 2000 PA Super 175, ¶ 29 (finding no facts to support a conclusion that the former employer engaged in any extreme or outrageous conduct).

## V. CONCLUSION

Rush was not a party to the lease between the B.I.A. Studios, LLC and Defendants, nor was she an intended third-party beneficiary; therefore, the breach of contract claim is dismissed. The claim for negligent retention is also dismissed because Pennsylvania has not recognized this cause of action in a landlord-tenant relationship and the facts here do not support extending the tort into this area. The Motion to Dismiss Counts One and Four is therefore granted. While this Court is concerned that the request for punitive damages in Count Three may not survive

summary judgment, this Court finds sufficient factual allegations to support the alleged claim at this early stage of the proceedings.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge